UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BEST BUY RV'S, INC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-4376** |
| **BOURGET'S OF THE SOUTH, L.L.C.** | **SECTION "B" (5)** |

*ORDER AND REASONS*

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. No. 8). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED.**

*BACKGROUND*

Following Hurricane Katrina, Defendant Bourget's of the South, L.L.C. ("Bourget's") contracted with FEMA to supply FEMA with trailers. Plaintiff, Best Buy RV's, Inc. ("Best Buy") and Bourget's entered into a series of transactions in which Best Buy sold trailers, built to FEMA's specifications, to Bourget's in September, October, and November 2005. On occasion, Bourget's would place an additional order before it had completed paying for the delivery of trailers from a previous order.

On September 20, 2005, Bourget's bought 59 trailers from Best Buy per Purchase Agreement 18645. On October, 6, 2005, Bourget's purchased a single trailer. On October 19, 2005, Bourget's

1

purchased 50 trailers from Best Buy.  Finally on or about November 8, 2005 through November 21, 2005, Bourget's completed the transaction to purchase a total of 1550 trailers.

When Bourget's placed orders, the parties usually signed a Best Buy Purchase Agreement, reflecting the number of units in the order and the model and price of the trailers.  Best Buy would then place an order with trailer manufacturer, Pilgrim International.

Purchase Agreement 19500 between Bourget's and Best Buy, an order for 1550 trailers, provided that Best Buy would accept delivery of the trailers at the Pilgrim manufacturing facility in Indiana.  On or about November 15, 2005, Glenn D. Smith, owner of Bourget's signed the Best Buy Purchase Agreement 19500 and faxed a copy of the front page of the agreement on November 21, 2005, which contained his signature, to Best Buy.  On November 8, 2005, only a week before, Dennis Ruzner, President of Best Buy, and Glenn D. Smith of Bourget's signed a letter agreeing to the deadline of January 20, 2006 for delivery and the penalty of $100 per trailer for late production for 1550 trailers at a price of $1,100 per trailer.

Personnel hired by Bourget's took delivery of the trailers at the Pilgrim manufacturing facility in Indiana and then transported the trailers to various locations.  At the time it took delivery of the trailers from Pilgrim, Bourget's had not yet paid for the trailers, but Best Buy had.  Best Buy's bank issued payment to

Pilgrim, immediately prior to or simultaneously with the delivery of the trailers to Bourget's personnel or agents.

Best Buy filed a lawsuit alleging that Bourget's failed to pay Best Buy $107,500.00 of the balance of the purchase price, which Bourget's owed relative to the delivery of 1530 of the trailers contained in the order for 1550 trailers.  The total price for the 1530 trailers was $16,863,000.00.  Meanwhile, Defendant Bourget's contends that Best Buy owes it $107,500.00 in penalties.  On October 15, 2007, Best Buy forwarded a demand letter to Bourget's requesting payment for the amount set forth in this motion.

Plaintiff Best Buy contends that it arranged an open line of credit with its bank who then issued payment to Pilgrim immediately prior to or simultaneously with the delivery of the trailers to Bourget's personnel or agents.  Plaintiff argues that such transactions were characteristic of an open account of credit between Best Buy and Bourget's.  Plaintiff claims that Defendant should be held liable for the for the balance of $107,500.00 for the order of 1550 trailers.  The Best Buy Purchase Agreement signed by the parties does not provide a date for delivery of the trailers by Best Buy; nor does it provide for Best Buy to pay any penalty for failure to deliver the trailers by a certain date.  Plaintiff claims that a proposed agreement that pre-dated (November 8, 2005) Purchase Agreement 19500 was signed by Best Buy with a handwritten amendment, but was never agreed to by Bourget's.  The proposed

agreement provided a delivery schedule and also provided for a penalty under certain conditions if Best Buy failed to deliver all the trailers by a certain date.  Plaintiff claims that this document never became effective because it was never executed by all the parties.  Plaintiffs also assert that the amount Defendant claims that Plaintiff owes cannot be used to off-set the amount owed to Plaintiff because it constitutes unliquidated damages.

Defendant Bourget's alleges that Best Buy failed to deliver trailers timely as provided by the contract; and failed to pay a penalty for the late delivery as provided by the contract. Bourget's claims that as a result of its first purchase from Best Buy, Bourget's negotiated a penalty clause as an addendum to other purchase agreements.  This addendum was forwarded to and signed by Dennis Ruzner on behalf of Best Buy and Glenn Smith on behalf of Bourget's.  The penalty provision requires that Best Buy pay a penalty of $100 per day for each trailer that does not meet the specified production date.  Based on the late production date at issue in the impending motion, the penalties amount to $107,500.00.

Bourget's also asserts that the transactions between parties were not sales on an open account under La. R.S. 9:2781.  Finally Bourget's denies that Best Buy is entitled to attorney's fees claiming that the sales were not on an open account.

## DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id*.  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S. Ct. at 2512.  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).  Finally, the plaintiff must present an issue of material as

to every one of the essential elements of each of his claims on which he bears the burden of proof at trial. *Celotex,* 477 U.S. at 322; *see also Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1444 (5th Cir. 1993).

**B.   Formation of the Contract**

In Louisiana, an "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not a the time of contracting the parties expected future transactions. La. R.S. 9:2781. While parties dispute whether Plaintiff is entitled to attorney's fees associated with an alleged open account in this matter, this Court must examine whether Defendant owes what Plaintiff alleges. As such, the contract must be evaluated.

A thorough examination of the Motion for Partial Summary Judgment necessitates the examination of the offer and the acceptance of the contract at issue. The letter signed by Glenn Smith, Owner of Bourget's, and Dennis Ruzner, President of Best Buy, constitutes an offer in writing for the purchase of 1,500 trailers at the price of $11,000 per trailer. *Defendant's Exhibit A-1*. Contained within this letter is the reference to penalty fee for late delivery and a deadline of January 20, 2006, by which to deliver the items.[1] Defendant contends that the presence of both

---

[1]The Court will not determine whether said deadline constitutes a material breach of contract, which would entitle Defendant to penalty because said question of breach is beyond

signatures notes an agreement to accept the provisions contained therein.  The last line of the page above the signature line states that parties "agree to the terms listed above."  However, Plaintiff asserts that the letter constitutes a written offer by Bourget's to Best Buy that Best Buy did not accept, as Mr. Smith never initialed the writing, despite having signed it.  Plaintiff avers that the subsequent exchanges of other writings between the parties, including the amended version of the November 8, 2005 letter that contained a type-written amendment by Bourget's increasing the order from 1530 trailers to 1550;[2] and a counter proposal by Best Buy to Bourget's amended version of the letter that contained a handwritten amendment by Best Buy support Plaintiff's claim that none of the versions of the proposed letter agreement dated November 8, 2005 had been accepted by Plaintiff.

An agreement whereby one party promises to sell and the other promises to buy a thing at a later time or upon the happening of a condition, or upon performance of some obligation by either party is a bilateral promise or sale or contract to sell.  Such an agreement gives either party the right to demand specific performance.  La Civ. Code art. 2624; *see also Moss v. Gifford, 974 So.2d 104, 109* (La.App. 3 Cir. 2007)(citing La. Civ. Code art.

---

the scope of Plaintiff's Partial Summary Judgment.

[2]There is no documentation of this change presented to the Court.

1927).  Consent of the parties is evidenced by the signature of Dennis Ruzner, President of Best Buy.  *See also Moss*, So.2d at 109.

The handwritten line that reads "11,000 per travel trailer is FOB Factory.  Bourget's of the South L.L.C. will pay for freight or delivery" is initialed by only one party.  However, both parties have consented to the type written letter through signatures.  The issue of validity of the handwritten provision, which could be construed as an amendment, is separate and distinct from the whether there had been an offer and acceptance of the contract.  The absence of the initialing of both parties speaks to issue of whether the handwritten provision was part of the accepted offer.  *See Kindred v. Hardie Meric, Inc.*, 159 So.2d 370 (La.App. 4 Cir. 1964).  As further support for this Court's finding that the penalty clause contained within the November 8, 2005 letter is part of the contract for sale, Dennis Ruzner of Best Buy admits the existence of a penalty clause in a letter to Harold Marchand of Bourget's, on March 28, 2006.  In the letter, Mr. Ruzner states, "I know and agree that there was a penalty clause in our agreement dated November 8, 2005."  As such, the signed version of the November 8, 2005 letter constitutes an offer and acceptance.

Louisiana Civil Code Art. 2601 governs the sales of movable where the acceptance contains terms additional to or different from the terms of the offer.  Rev. Civ. Code, Art. 2601 reads:

> An expression of acceptance of an offer to sell
> a movable thing suffices to form a contract of

>       sale if there is agreement on the thing and the
>       price, even through the acceptance contains terms
>       additional to, or different from, the terms of
>       the offer, unless acceptance is made conditional
>       on the offeror's acceptance of the additional
>       or different terms.  Where the acceptance
>       is not so conditioned, the additional or different
>       terms are regarded as proposals for modification
>       and must be accepted by the offeror become part
>       of the contract.

The additional or different terms contained within the confirmation Purchase Order Form, Agreement 19500, were accepted by Bourget's. However, these additional terms do not act to nullify the penalty clause or the non-conflicting terms of the initial agreement.

**C.   Interpretation of Agreement 19500**

Defendant Bourget's argues that the affidavits of Harold Marchand and Glen Smith, *inter alia*, establish that the between Best Buy and Bourget's consisted of more than the Purchase Agreement 19500 presented by Plaintiff Best Buy to the Court. Under the Parol Evidence Rule, where the parties to a contract express their agreement in writing with the intent that it embody the fully integrated agreement, contemporaneous writings are inadmissible to vary the terms of the writing.  The initial agreement dated November 8, 2005, does not represent a fully integrated agreement, as such transactions generally necessitate a wide array of provisions as contained in Agreement 19500. As such, the Parol Evidence Rule does not bar Agreement 19500 or the November 8, 2008 letter from review of this Court. In light of the inapplicability of the Parol Evidence Rule, as well as Louisiana

Civil Code, the November 8, 2005 letter along with Agreement 19500 comprise the full contract between the parties.

**D.  The Existence of an Open Account**

In Louisiana, an "open account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. An open account shall include debts incurred for professional services, including but not limited to legal and medical services. La. R.S. 9:2781(D).  To determine whether there is an open account, as opposed to simply an unpaid debt, the following four factors should be balanced: (1) whether there were other business transactions between the parties; (2) whether a line of credit was extended; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings.  *Dixie Machine Welding & Metal Works, Inc. V. Gulf States Marine Technical Bureau, Inc.*, 692 So.2d 1167, 1170 (La. App. 5th Cir. 3/12/97).  In *Frey Plumbing Co., Inc. v. Foster*, the Supreme Court of Louisiana provided further guidance by asserting that, "[u]nder a plain reading of [La. R.S. 9:2781(D)], there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions." 2008 WL 500943 (2/26/08).  When any person fails to pay an open account within thirty days after the claimant sends

written demand setting forth the amount owed, that person shall be liable for reasonable attorneys fees.  La. R.S. 9:2781©).  Because the award of attorney's fees is penal in nature, the amount demanded must be correct in order for the court to award attorney's fees.  *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.,* 449 So.2d 1014, 1015 (La. 1984); *Dutel v Succession of Touzet*, 649 So.2d 1084, 1086 (La.App. 4 Cir. 1/19/95).

Plaintiff claims the existence of an open account, and made a demand for the amount in controversy on October 15, 2007.  However, Defendant claims to have entered into several separate contractual agreements with Plaintiff Best Buy that have a remaining balancing that support Plaintiff's claim that an open account existed.  Defendant claims that none of the Purchase Agreements indicate that the purchaser is entering into an "open account" or any type of financing agreement with Best Buy.  Defendant further alleges that the amount Plaintiff owes in penalties is the amount in controversy sought by Plaintiff.

The record contains sufficient evidence to support that an open account did exist.  There were numerous contract agreements between Plaintiff and Defendant, and a balance is owed.  Defendant's assertion that there was no express agreement to that effect proves of no consequence to the Court's analysis guided by the Supreme Court of Louisiana's plain reading of the statute in *Foster*.  As such, attorney's fees may be owed by Defendant, if

Plaintiff asserted the correct amount. *See Dutel v Succession of Touzet*, 649 So.2d 1084, 1086 (La.App. 4 Cir. 1/19/95); *see also Montgomery Stire & Partners, Inc. v. London Livery*, 769 So.2d 703, 706 (La.App. 4 Cir. 9/20/00).

E.  **Penalty and the Amount Owed**

Defendant avers that the late production of the trailers invokes the penalty clause contained within the November 8, 2005 letter, which effectively cancels out the amount of $107,500.00. On the surface it may appear that this penalty clause presents material issues as to the specific amount owed on the open contract and places into doubt whether Defendant owes anything to Plaintiff at all.  However, this penalty constitutes an unliquidated debt, which cannot set off the liquidated debt demanded by Plaintiff. Notwithstanding Defendant's reference to the amount allegedly owed under the penalty provision, Defendant has failed to otherwise call into question whether the amount demanded by Plaintiff is correct.

A determination as to the liquidity of a claim is an essential prerequisite to deciding whether such a claim is a proper basis for a plea of compensation. *Independent Living v. State of Louisiana, Dept. Of Social Services*, 638 So.2d 1202, 1205 (La. App. 1st Cir. 6/24/94); *see* La. Civ. C. art. 1893.  In *Olympic Ins. V. H.D. Harrison, Inc.*, the Fifth Circuit affirmed the district court's entry of summary judgment for the plaintiff, which involved a dispute regarding liquidated and unliquidated damages. 418 F.2d 669

(5th Cir. 1969).  In *Olympic Ins. Co.*, the Court stated that "setoff or compensation takes place only between two debts which are equally liquidated and demandable."  *Id.* at 672.  In *Independent Living Center Inc.,* the court stated "[a] claim is liquidated when the debt is for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards." 638 So.2d at 1205(quoting *Sims v. Hays*, 521 So.2d 730,733 (La.App. 2d Cir. 1988)).  In contrast, unliquidated damages are contested and not capable of exact ascertainment; they may be based on damages claimed because of breach of contract occasioned by delays, insufficiency of deliveries and other allegations not capable of proof promptly and summarily.  *Olympic*, 418 F.2d at 672-673. Bourget's breach of contract defense involves an allegation of an unliquidated debt because Best Buy disputes that the alleged breach caused by its delay would invoke the penalty.  In contrast, the amount claimed by Plaintiff results from the tabulation of $1,100 per trailer, with a total of 1530 trailers delivered and the amount outstanding, and therefore Plaintiff's demand constitutes liquidated damages.

Although Defendant's argument for set-off proves unsuccessful to defeat Plaintiff's Motion for Partial Summary Judgment, the terms of the contract introduce material factual disputes. Purchase Agreement 19500 states in Section 1 and 2:

> 1.  IF NOT A CASH TRANSACTION: If I do not complete this as a cash transaction, I know

>     before or at the time of delivery of the
>     unit purchased, I will enter into a retail
>     installment contract and sign a security
>     agreement or other agreement as may be
>     required to finance my purchase.
> 2.  TITLE: Title to the unit purchased will
>     remain in the dealer's name until the agreed
>     upon purchase price is paid in full in cash,
>     or I have signed a retail installment contract
>     and it has been accepted by a bank or
>     finance company, at which time title passes
>     to me even though the actual delivery of the
>     unit purchased may be made at a later date.

The clauses reprinted above introduce material factual issues concerning whether the amount claimed to be due is actually owed, as a retail installment contract, if entered into, may have altered or may alter the financial obligations of the parties.[3] Plaintiff has not briefed the court about this and has not presented sufficient evidence that this section would not alter the amount owed, leaving the amount owed still in question.

The evidence presented to the Court regarding the amount owed does not purge the record of material issues remaining before the Court. Simply asserting that $107,500.00 is the amount owed by Defendant does not suffice as to ensure the Court that this amount is proper. The absence of evidence in the record substantiating this amount as correct further buffers this Court's denial for partial summary judgment. Further, in *Montgomery Stire & Partners,*

---

[3] If the provision alters the tabulation or what is required of the parties, the damages sought by Plaintiff may not necessarily constitute liquidated damages as more than just a simple tabulation would be required.

14

*Inc. v. London Livery*, the Fourth Circuit of the Louisiana Court of Appeals stated, "the amount owing on an open account is a question of fact."  769 So.2d 703, 706 (La.App. 4 Cir. 9/20/00).  Given the genuine material issues for trial, the Court cannot grant partial summary judgment in favor of Plaintiff.

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED.**

New Orleans, Louisiana, this 22nd day of April, 2008

IVAN L. R. LEMELLE

UNITED STATES DISTRICT JUDGE